(No. 41476.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
MARIO T. SPROVIERI, Appellant.

*Opinion filed May 28, 1969.—Rehearing denied November 25, 1969.*

WARD, J., took no part.

BELLOWS, BELLOWS & MAGIDSON, of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and JAMES B. HADDAD, Assistant State's Attorneys. of counsel,) for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This is an appeal from the Appellate Court, First District, which reversed the trial court order granting defendant's motion to suppress certain evidence. Defendant's principal contention was that the evidence he sought to suppress was the product of an unlawful search and seizure.

The only evidence adduced at the hearing on the motion was the testimony of Officer William Lenz, one of the policemen present at defendant's private garage where the articles were discovered and seized. It was established that at about 3:20 P.M., on May 29, 1965, a man's body was found in the trunk of a car parked in the rear of premises on Grand Avenue in Chicago. At about 4:45 P.M., Sprovieri was present and had occasion to view the body. He stated that he did not know the victim but that the body looked like a cab driver he knew. At about 4:35 A.M., on May 30, the police learned that the victim was Leslie Vana. Further investigation by the police developed that Miss Judith Blaha had been living with Vana for about a year and a half; that for several years prior thereto she had a meretricious relationship with Sprovieri; that for a time Judith, Vana

and Sprovieri lived in the same house; that she had left her apartment about 6:30 P.M. on May 29 accompanied by a man fiitting Sprovieri's description; that when she left she was seen carrying a distinctive red suitcase; that she intended to leave town with Sprovieri; that she had a 1959 or 1960 white Thunderbird convertible automobile; and that Sprovieri had threatened bodily harm to both Vana and the girl and particularly threatened to "break Vana's head" if he did not stop seeing her.

The police went to defendant's home about 1:00 P.M. May 30 for the purpose of effecting his arrest. A tenant in the building informed them that he had not seen Sprovieri that day. They then went to defendant's rear apartment and upon receiving no response, peered through the window. They saw a couch on which was a red suitcase and some "part" of woman's apparel. The officers slipped the front door lock, entered the apartment and left after finding no one there. They then proceeded to Sprovieri's private garage at the rear of the premises, and finding the side door locked, looked through a hole in the door caused apparently by the removal of a cylinder lock. They were able to see a 1959 or 1960 white Thunderbird convertible automobile, a tank, a bicycle and approximately 12 feet of bicycle chain. They then went to the alley behind the garage and turning the handle of the overhead door, raised it and walked in. No one was in the garage but they saw and seized the items considered by them to be evidence of the crime and which the defendant subsequently sought to have suppressed. Sprovieri was later arrested.

The trial court found that the police had reasonable cause to believe that an offense had been committed and that defendant had committed it. However, the court held that because the search was not reasonably contemporaneous with a valid arrest, the evidence should be suppressed. The appellate court reversed on the basis of this court's

decision in *People* v. *Barbee,* 35 Ill.2d 407. We granted leave to appeal.

In *Barbee,* the police, having probable cause to believe that Barbee had committed an offense, went to his home for the purpose of arresting him. They entered his home pursuant to an invalid search warrant and, as part of their search for him, entered an adjoining garage. Upon lifting some tarpaulins, they found a stolen car. Unknown to them at the time, Barbee was apprehended by other police officers in another part of the city. He was tried and convicted for the theft of the automobile.

Sustaining the seizure of the car and Barbee's conviction, this court removed from consideration the invalid search warrant as a justification for the conduct of the police in entering Barbee's home and held that "the officers were lawfully present in the garage where the stolen car was found. They [the police] were not required to overlook the stolen car which was before them in plain view when they had removed the tarpaulins in their search for Barbee. Here, as in *Abel* v. *United States,* 362 U.S. 217, 238, 4 L. Ed. 2d 668, it would be without reason to say that the officers must overlook or return an article subject to lawful seizure 'because it was not one of the things it was his business to look for.'" 35 Ill.2d at 412.

The facts before us are similar to those in *Barbee.* The police had learned that Sprovieri knew Vana, and were apprised of the illicit relationship of Sprovieri and Vana with Judith Blaha. They also knew of the threats which Sprovieri had made to Vana and Judith and that Sprovieri intended to leave town. The trial court properly held that the police had probable cause for arresting Sprovieri. Defendant, however, contends that the police were obliged to obtain an arrest warrant prior to attempting his arrest in his home. It is sufficient to note that in one of the cases he cites for his position, *Chapman* v. *United States,* 365 U.S. 610, 5

L. Ed. 2d 828, 81 S. Ct. 776, the court indicated that if a suspect was fleeing or likely to take flight, an arrest warrant could be dispensed with. (*Cf. People* v. *Macias,* 39 Ill.2d 208.) Upon viewing the telltale luggage and some woman's apparel through the window the officers had cause to enter Sprovieri's apartment and, not finding him there, to continue their search for him. It would be normal required procedure to look into the garage at the rear of the premises and upon discovering the Thunderbird convertible and the other objects, to enter the garage.

The fact that no arrest was made at the time is not significant. As was stated in *Barbee*: "when an officer is authorized to make an arrest, he is also authorized 'to break open a door or window of any building in which the person to be arrested is or is reasonably believed to be, if he is refused admittance after he had announced his authority and purpose.' [Citation.] It is of course true that in the present case the officers who entered Barbee's home made no arrest. But this circumstance can not be significant. Just as 'a search is not to be made legal by what it turns up', (*United States* v. *Di Re,* 332 U.S. 581, 595, 92 L. Ed. 210), so the legality of the conduct of the officers in this case is to be determined upon an appraisal of the situation that confronted them, and not upon the success or lack of success of their efforts." 35 Ill.2d at 411.

Normal precautionary measures require that the police eliminate all hiding places before moving on. An entry into the garage was proper under the circumstances in this case. The officers had reason to believe that Sprovieri and his companion might be hiding there or that Judith had suffered the same fate as Vana, whose body was found in an automobile. We therefore hold that once lawfully inside the garage, the police were not obliged to overlook those items which they reasonably thought were connected with the slaying of Vana and which lay in open view.

228

The judgment of the Appellate Court for the First District is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.