THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANTHONY SPENCER, Defendant-Appellant.

First District (5th Division)    No. 80-2533

Opinion filed July 9, 1982.

Marshall R. Weinberg, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Adrienne Noble Nacev, and James Klein, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MEJDA delivered the opinion of the court:

Defendant was charged with murder, armed robbery and attempted aggravated kidnapping, tried by a jury, and found guilty on all charges. He was sentenced to 40 years imprisonment. Defendant appeals.

Defendant raises three issues on appeal: (1) whether the police had probable cause to arrest him; (2) whether the court erred in allowing the prosecutor to cross-examine defendant's alibi witnesses as to their failure to testify at the preliminary hearing; and (3) whether the prosecutor's remarks during closing argument were so improper as to deny the defendant a fair trial.

An abbreviated statement of facts follows. Additional evidence necessary to the resolution of each issue will be given as needed. During the evening of August 2, 1979, Dr. Ng Lun, of Windsor, Ontario, his wife Threse, his daughter Valerie, his son John, and his nephew Victor Seeyave, walked east on Cermak Road to State Street hoping to find a cab to take them to their hotel located on North Lake Shore Drive. They were accosted on State Street by two men, one of whom had a gun. One of the men demanded that Valerie give him her purse. She complied. The purse contained $45-50 in Canadian money and a watch. The man with the gun reached for Threse and said, "Lady, you are coming with me." In response Dr. Ng Lun tried to pull his wife towards him. When he did so, the man with the gun walked in front of Dr. Ng Lun and shot him. Both men fled following the shooting. Dr. Ng Lun, although now wounded, walked with his family two blocks further down the street when he suddenly collapsed. John and Victor ran down State Street to summon help. Dr. Ng Lun was taken by the police to Mercy Hospital where he died a short time later. While waiting at the hospital Victor and John viewed approximately 90 photographs brought there by the police. Victor singled out only one photograph as looking similar to the assailant.

On August 3, 1979, Valerie viewed three lineups. Defendant was only included in the third. She did not identify anyone from the first, stated that a man in the second, later identified as Carl Miller, looked similar to the assailant and from the third lineup identified defendant as the perpetrator.

Victor also viewed three lineups on August 3, 1979. He did not identify anyone from the first, and from the second also singled out Carl Miller as looking like the assailant, and from the third lineup identified the defendant as the perpetrator, although he stated at the time of the identification that the defendant's hair was different from that of the man who did the shooting. Police investigator Johnson described defendant's hair on the day of the lineup as extremely close to his head and filled with grease. Valerie and Victor viewed the lineups independently of each other.

On March 26, 1980, an assistant State's Attorney and a police investigator flew to Windsor, Ontario, to show Threse and John six photographs. John identified the defendant's photograph as that of the man who shot his father. Threse was unable to identify anyone as the assailant from the photographs.

At trial Valerie, John and Victor also made in-court identifications of defendant as the man who shot Dr. Ng Lun. Threse Ng Lun did not make an in-court identification of defendant.

The defendant called Diego "Eddie" Ghebremediahan, Anthony Brown and Ramon Sims to testify on his behalf. All testified that on the night and at the time in question they were with defendant at Eddie's home drinking beer. Over defense counsel's objection the prosecutor asked Brown and Sims why they hadn't testified at the preliminary hearing held on August 23, 1979. An assistant State's Attorney later testified, however, that the names of these three defense witnesses were known and included in the felony file folder prepared on the case as early as August 3, 1979.

The defendant's brother testified that on the night of the crime defendant's hair had been processed so that it was lying down on his head in waves, and further that defendant had worn his hair in that style for a long time prior to August 2, 1979. Although defendant's home was searched by the police on August 3, 1979, they found nothing there taken in the robbery. Neither Canadian money nor Valerie's watch were found on defendant's person when he was arrested. At the time of his arrest defendant was wearing new shoes and a new suit and had purchase receipts totaling $124.63 in his possession.

The jury found defendant guilty of all charges. Defendant appeals.

OPINION

Defendant first contends that the police lacked probable cause to arrest him and that therefore the trial court erred in denying his motion to quash his arrest and suppress evidence.

As stated in *People v. Creach* (1980), 79 Ill. 2d 96, 101, 402 N.E.2d 228, 230, *cert. denied* (1980), 449 U.S. 1010, 66 L. Ed. 2d 467, 101 S. Ct.

564, "Probable cause to arrest exists 'when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense.' [Citations.]" Although an uncorroborated tip by an unknown informer is insufficient to establish probable cause, where the tip is independently corroborated by other facts and circumstances, probable cause has been found to exist. (*People v. Helms* (1978), 67 Ill. App. 3d 729, 385 N.E.2d 127.) Police officers may rely on the tip of a private citizen without independent verification or examination of his reliability. (*People v. Bell* (1981), 96 Ill. App. 3d 857, 421 N.E.2d 1351.) In deciding the question of probable cause the courts deal with probabilities, the factual and practical considerations of everyday life on which reasonable men, not legal technicians, act. (*People v. Walls* (1980), 87 Ill. App. 3d 256, 408 N.E.2d 1056.) Whether or not probable cause to arrest exists in a particular case depends upon the totality of the facts and circumstances known to the officers at the time of arrest. A reviewing court will affirm the trial court's determination unless it is manifestly erroneous. *People v. Sanford* (1980), 85 Ill. App. 3d 1010, 407 N.E.2d 810.

■■ A hearing was held on defendant's motion to quash his arrest and suppress evidence. The evidence adduced at that hearing showed that at the time of the arrest Darryl Willey, the arresting officer, knew that two eyewitnesses had stated Carl Miller, whom they had viewed in lineups, looked like but was not the assailant; that Carl Miller told another police officer that he had seen defendant running from the area on the night and at the approximate time of the incident; that foreign money was taken in the robbery; and that an informant unknown to Willey had told another police officer that defendant was seen after the murder with foreign money in his possession. In addition to the information he had from other sources, the arresting officer of his own personal knowledge knew that Carl Miller and the defendant looked alike as he had arrested both in the past. Further, he had arrested the defendant two months earlier for an armed robbery on the very same street in the same neighborhood. In light of the totality of these circumstances, the arresting officer had probable cause to arrest defendant.

■■ Defendant next asserts that the trial court erred in allowing the prosecutor to cross-examine defendant's alibi witnesses as to their failure to testify at the preliminary hearing. We deem this issue waived, however, as defendant failed to raise this issue in his written post-trial motion for a new trial. (*People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227; *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) We recognize that improper cross-examination has been deemed plain error for purposes of review " '[w]here the magnitude of the error may result in substantial prejudice

to the right of the defendant to a fair trial * * *' [citation]." (*People v. Godsey* (1978), 74 Ill. 2d 64, 72, 383 N.E.2d 988, 992.) However, in the instant case we fail to see any prejudice accruing from this alleged error, as an assistant State's Attorney called by the defense testified during trial that the felony file folder he prepared on the case showed that the names of the defendant's alibi witnesses were known on August 3, 1979, almost three weeks prior to the preliminary hearing. Thus, any possible inference that defendant's alibi was a recent fabrication for purposes of trial which might have been drawn from the failure of defendant's alibi witnesses to testify at the preliminary hearing was negated. Therefore, plain error to require reversal is not here applicable.

Lastly, defendant urges that he was denied a fair trial when the court permitted the prosecution to make improper and prejudicial remarks during closing argument. Every defendant is entitled to a trial free from improper comments. (*People v. Roberts* (1981), 100 Ill. App. 3d 469, 426 N.E.2d 1104.) However, the verdict will not be disturbed on review where such remarks did not constitute a material factor in the conviction or result in substantial prejudice to the accused. (*People v. Richard* (1980), 88 Ill. App. 3d 247, 410 N.E.2d 459.) In criminal appeals involving questions of improper argument by the prosecutor, each case must be decided upon its own facts. *People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880.

■■ Defendant particularly ascribes as prejudicial the prosecutor's allusion to the failure of defendant's alibi witnesses to testify at the preliminary hearing as a reason for disbelieving them. Reference by the prosecutor to the failure of defendant's alibi witnesses to testify at the preliminary hearing was clearly improper because a defendant is not required to present his defenses at the preliminary hearing. (*People v. Patterson* (1976), 44 Ill. App. 3d 894, 358 N.E.2d 1164; *cf. People v. Smith* (1981), 94 Ill. App. 3d 969, 419 N.E.2d 404.) However, for the reasons previously discussed relative to the cross-examination of the alibi witnesses we fail to see any prejudice accruing from these remarks.

Defendant also complains of the prosecutor's remarks attacking defendant's attorney. These included:

"What did Mr. Weinberg have to hide at the beginning of this case?
* * *
An attorney, * * * [w]hen he has neither [the facts nor the law] he will reach out and he will get in the gutter.
* * *
Mr. Weinberg is a hired lawyer. He does not come into court defending the innocent. He comes in when he is paid to come in.
* * *
I don't know where the money came from for the rest of that

clothing. I don't know where it came from, from a liar of Mr. Weinberg's caliber."

The invectives directed at defense counsel during closing arguments were highly improper. (*People v. Williams* (1981), 99 Ill. App. 3d 919, 425 N.E.2d 1321; *People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880; *People v. Witted* (1979), 79 Ill. App. 3d 156, 398 N.E.2d 68.) Defendant argues that these remarks constituted reversible error, citing *Weathers, Witted, People v. Monroe* (1977), 66 Ill. 2d 317, 362 N.E.2d 295, and *People v. Suggs* (1977), 50 Ill. App. 3d 778, 365 N.E.2d 1118. In *Weathers*, in addition to charging defendant's attorney with lying, the assistant State's Attorney repeatedly charged that defendant lied, stated that the judge knew that the defendant had committed the crime, and argued facts not in evidence. (Accord, *Witted*.) In *Monroe* and in *Suggs*, the impermissible conduct rose to such a level that it was characterized as creating a trial of the lawyers rather than a determination of the issue of guilt. Although the instant remarks are highly unprofessional and not to be condoned, we do not believe that their gravity reached the magnitude of those found in the cases relied upon by the defendant.

■■ In light of the positive identification of defendant as the perpetrator by three eyewitnesses to the shooting, we do not believe that the improper remarks of the assistant State's Attorney were a material factor in his conviction and thus do not necessitate reversal. *People v. Burnett* (1963), 27 Ill. 2d 510, 190 N.E.2d 338; *People v. Calderon* (1980), 85 Ill. App. 3d 1030, 407 N.E.2d 840; *People v. Shorter* (1978), 59 Ill. App. 3d 468, 375 N.E.2d 513.

For the reasons cited herein, the judgment of the trial court is affirmed.

SULLIVAN, P. J., and WILSON, J., concur.