THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
JOHN F. SAIN, Defendant-Appellee.

Second District No. 83—204

Opinion filed March 27, 1984.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner and Diana Fischer-Woods, Assistant State's Attorneys, of counsel), for the People.

John P. DeRose, of DeRose & Russo, of Oak Brook, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

The State appeals under Supreme Court Rule 604(a)(1) (87 Ill. 2d R. 604(a)(1)) from a written order of the trial court granting the motion of defendant, John F. Sain, to suppress evidence seized from his home in a search conducted pursuant to a search warrant. The search

warrant had been issued on the complaint of Officer Steven Arp, who had observed cannabis in defendant's living room when Officer Arp had entered defendant's home in a previous unsuccessful attempt to execute an arrest warrant for defendant on an unrelated charge. As a result of the seizure, defendant was charged by information with unlawful possession of more than 500 grams of a substance containing cannabis. (Ill. Rev. Stat. 1981, ch. 56½, par. 704(e).) Defendant's motion to suppress was granted, and the State filed a certificate of impairment and notice of appeal.

The only issue raised on appeal by the State is whether the trial court erred in granting defendant's motion to suppress evidence where it is contended the cannabis was discovered during an earlier, reasonable entry into defendant's residence by police who had an arrest warrant for defendant.

Defendant's written motion to suppress alleged that Officer Arp had obtained the information leading to the search warrant "without lawful authority" because he entered defendant's home to execute an arrest warrant with "no reason to believe Defendant was physically present in the domicile." The motion also alleged that impermissible force was used to gain entry and that no exigent circumstances existed to justify the entry.

At the hearing on the motion to suppress Steven Arp, a village of Lisle police officer testified that on June 29, 1982, at approximately 9:30 p.m. he received a dispatch that Sue McLennon was receiving harassing telephone calls again. The dispatcher told him McLennon believed the harassing calls were coming from defendant's residence. Arp had become aware on the previous day of an arrest warrant for defendant. The warrant was for assault (Ill. Rev. Stat. 1981, ch. 38, par. 12—1(a)), a Class C misdemeanor, against Sue McLennon. After receiving the dispatch, Arp went to defendant's residence where he could see light coming from inside the small, single-story house. Curtains covered the front windows which prevented his seeing inside. Officer Bandy arrived at defendant's home at approximately the same time as Arp arrived. Arp did not know the defendant and had never been to the house before.

Arp went to the back door and knocked. He did not recall how many times he knocked but believed it would have been more than one tap. After knocking he did not identify himself as a police officer nor announce that he was there to execute an arrest warrant.

While Arp was at the back door, Bandy called him over the radio and told him there had been no answer at the front door.

Fifteen to twenty seconds after Arp started knocking, and after

Bandy had called him on the radio, Arp tried the door handle and discovered that the door was unlocked. Arp then opened the door and walked into an enclosed porch. He walked to another unlocked door, opened it, and walked into the kitchen. The kitchen lights were on. While in the kitchen he called out "hello, Police, [or] something to that effect" but received no response to this call, nor had he previously heard anything from inside the house.

He then walked into the living room, which was illuminated by the kitchen lights. In the living room, next to a chair, he observed a plastic bag containing a brown leafy substance that appeared to be cannabis. After observing the cannabis, Arp went to the front door, had a conversation with Bandy, then left the house by retracing his steps and leaving through the back door. He did not search any other rooms in the house concluding he "did not feel he [defendant] was in there" because the rest of the house was dark and he heard no noises.

Arp drove away but returned a few minutes later. On his return, he observed that defendant's car was there. Defendant came to the door and, after some conversation, came out and went with Arp to the police station. Arp did not enter the house at this time.

Arp later prepared a complaint for a search warrant based on the information he had gained while inside defendant's house. Arp executed this search warrant on July 1, 1982.

Timothy R. Bandy, a village of Lisle police officer, testified that he met Officer Arp at defendant's residence to assist him in executing the arrest warrant. Bandy knocked on the front door several times while Officer Arp went to the rear of the house. Bandy stood and knocked at the front door for no more than two or three minutes. He received no response. Later, while he was standing at the door, Officer Arp opened the front door from inside and told him defendant was not home. Bandy did not recollect seeing lights emanating from the premises.

Defendant testified that he got home on June 29, 1982, between 9 and 10 p.m. While he was sitting in a chair he saw flashing red lights, went outside, met Officer Arp, was arrested and taken to the police station. Later, he discovered that he had to use a hammer and nails to "beat the [back] door facing back together" and stated that the "door to the utility room which leads to the kitchen was broken." He testified that Sue McLennon formerly was his fiancee.

The trial court granted defendant's motion to suppress finding that there was "little in this record to suggest that the officer in this case held a reasonable belief that defendant was within his home ***." The trial court also specifically found that the officers did not

use force in gaining entry.

Generally, a trial court's ruling on a motion to suppress will not be disturbed unless it is manifestly erroneous. (*People v. Garcia* (1983), 97 Ill. 2d 58, 74, 454 N.E.2d 274.) However, when neither the facts nor the credibility of witnesses is in issue the question is a legal one subject to *de novo* consideration by the reviewing court. (*People v. Abney* (1980), 81 Ill. 2d 159, 168, 407 N.E.2d 543; *People v. Klimek* (1981), 101 Ill. App. 3d 1, 4, 427 N.E.2d 598.) Here, the trial court accepted the officers' testimony but found that the facts as related by the officers did not show that the entry was constitutionally reasonable. Thus, we consider *de novo* the question whether the evidence should have been suppressed.

In *Payton v. New York* (1980), 445 U.S. 573, 603, 63 L. Ed. 2d 639, 661, 100 S. Ct. 1371, 1388, the United States Supreme Court, in *dicta*, noted that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." (See also *State v. Loftin* (1981), 276 S.C. 48, 275 S.E.2d 575.) While our supreme court has not comprehensively addressed the issue, it has recognized that when an officer is authorized to make an arrest, he is also authorized to break open a door or window of any building in which the person to be arrested is or "is reasonably believed to be," if he is refused admittance after he has announced his authority and purpose. (*People v. Sprovieri* (1969), 43 Ill. 2d 223, 227, 252 N.E.2d 531; *People v. Barbee* (1966), 35 Ill. 2d 407, 411, 220 N.E.2d 401.) One Illinois Appellate Court decision, *People v. Stibal* (1978), 56 Ill. App. 3d 1048, 1051, 372 N.E.2d 931, has stated the rule to be:

> "An officer executing an arrest warrant is authorized to enter a building where the person is 'or is reasonably believed to be' if he is refused admittance after announcing his authority and purpose (*People v. Barbee* (1966), 35 Ill. 2d 407, 411, 220 N.E.2d 401), and an officer is justified in eliminating all places where the arrestee may be hiding before moving on. (*People v. Sprovieri* (1969), 43 Ill. 2d 223, 227, 252 N.E.2d 531.)"

In *Stibal*, the arrest warrant being executed was for a misdemeanor offense, as is the case here, and no apparent distinction in the test of reason to believe the suspect is within is made in the case law whether the arrest warrant be for felony or misdemeanor offense. It has been stated that the Illinois rule is that the police who have probable cause to arrest a suspect may enter the suspect's home and garage unless they know he is absent. Haddad, *Arrest, Search and Sei-*

*zure: Six Unexamined Issues in Illinois Law*, 26 DePaul L. Rev. 492, 512 (1977).

There is some authority in other jurisdictions, however, that the police can enter a suspect's dwelling for arrest purposes only if they have probable cause to believe that the suspect is within. (See generally 2 W. LaFave, Search & Seizure sec. 6.1, at 374-76 (1978); Haddad, *Arrest, Search and Seizure: Six Unexamined Issues in Illinois Law*, 26 DePaul L. Rev. 492, 512-14 (1977).) Although the Illinois decisions cited above are not of relatively recent origin, antedate *Payton v. New York*, and do not make any analysis of whether a probable cause test, or the less rigid reason-to-believe test, should be applied, we perceive no persuasive logic in requiring the higher probable cause test in the situation present here where a valid arrest warrant issued by a judge for defendant exists and the place to be searched is the defendant's own residence. This view is consistent with that expressed by the United States Supreme Court, in *dicta*, in *Payton v. New York*. Thus, the question we must next address here is whether the officers had reason to believe defendant was at home and thus were justified in entering in an attempt to execute a warrant for his arrest.

Officer Arp had received a call from the dispatcher telling him that a woman, defendant's ex-fiancee, had just received a harassing telephone call and that the woman believed the call had come from defendant's home. Arp knew that a warrant was outstanding for defendant and proceeded to defendant's residence. He observed a light on in defendant's home, but could not see within. When neither Arp nor Officer Bandy received an answer to his knocking, Arp turned the back door knob and discovered it was unlocked. It was only then that Arp entered the premises.

Defendant argues that these factors were insufficient to give the officers reason to believe defendant was home. He argues that the information received from the dispatcher does not support the conclusion he was at home because, as the trial court found, his ex-fiancee did not state any facts to support her belief that the calls were coming from defendant's home.

While the trial court did find that the basis for the ex-fiancee's belief was not established, the important question in this regard is not whether the ex-fiancee's information was ultimately proved to be correct, but whether the officers could rely on that information as a basis for having reason to believe defendant was at home.

In an analogous context, where police officers receive information from a private citizen or victim, they may rely on that information

without independent verification of the citizen's reliability for the purpose of determining whether probable cause to arrest exists. (*People v. Jones* (1983), 119 Ill. App. 3d 615, 623, 456 N.E.2d 926; *People v. Spencer* (1982), 107 Ill. App. 3d 835, 838, 438 N.E.2d 603.) The fact that this citizen's information might later prove to be inaccurate should not affect the officer's reliance upon the average citizen's representations. 1 W. LaFave, Search & Seizure sec. 3.4, at 592 (1978).

Here, probable cause is not in issue. However, it is appropriate to apply this reasoning to the question whether the officers had reason to believe defendant was at home. Defendant's ex-fiancee, the victim of the purported crime, reported to the police that she had received a harassing telephone call and that she believed it had come from defendant's home. When Officer Arp received this information, he had no reason to doubt its reliability.

Even if we were not to consider this particular information, other sufficient reason to believe defendant was at home is present here. It is reasonable to look to defendant's residence as a place he might be found. (*People v. Sprovieri* (1968), 95 Ill. App. 2d 10, 14, 238 N.E.2d 115, *aff'd* (1969), 43 Ill. 2d 223, 252 N.E.2d 531.) When the officers arrived at defendant's home, Officer Arp observed a light on in the house. Considering the information he had received from the dispatcher, the presence of the light gave further reason to believe defendant was home.

After knocking at the back door and after Officer Bandy had been knocking at the front door, Arp tried the doorknob and discovered it was unlocked. An unlocked door is another factor that may be considered to give a police officer reason to believe that the person sought is within the premises. Defendant's contention that *Sabbath v. United States* (1968), 391 U.S. 585, 20 L. Ed. 2d 828, 88 S. Ct. 1755, held that the turning of the knob is itself an entry, and therefore, that Arp could not consider this information, is an incorrect interpretation of that case. *Sabbath* held that entry through an unlocked door was subject to the Federal statute requiring an officer to announce his purpose prior to breaking open a door or window. For purposes of the statute, entry through an unlocked door was held to be equivalent to breaking open the door and entering. *Sabbath* did not hold that the turning of the knob was itself an entry. Thus, Arp could consider the unlocked door as a factor in forming a reason to believe defendant was home.

■ Defendant also maintains that the presence of light inside the house and the unlocked door did not give the officers reason to believe defendant was within the house. He contends that people who

are not at home leave lights on and doors unlocked and, therefore, that his presence could not be inferred from these facts. However, the guiding principle is the reasonableness of the belief, not the certainty. Defendant also contends that the officers did not have reason to believe he was within because they heard no movement inside, defendant's car was not in the driveway, and they had no information that he had been seen entering the house but not leaving it. While these factors may be relevant generally, they certainly are not the only appropriate considerations, and their absence, in view of other evidence tending to show defendant's presence in the house, does not compel a contrary result.

Here, the presence of the light and the unlocked door gave the officers reason to believe defendant was within the house. There is no indication in this record that the entry by police to execute the arrest warrant was a pretext to enter for some other purpose. In addition, the trial court found Officer Arp's entry was peaceable through an unlocked door. Accordingly, we hold that the entry to execute the warrant was constitutionally reasonable because the officers had reason to believe under the particular facts present here that defendant was within his house.

Defendant also contends that the failure of the officers to announce their presence renders the entry constitutionally unreasonable. The trial court considered this failure to announce to be "fairly significant in assessing this entry constitutionally unreasonable."

Illinois does not have a statutory "knock and announce" rule and no constitutional authority requires an officer to announce his authority and purpose prior to entering a dwelling to make an arrest. (*People v. Cobb* (1983), 97 Ill. 2d 465, 486, 455 N.E.2d 31.) While "the mere failure of police to announce their authority and purpose does not *per se* violate the Constitution, it may influence whether subsequent entry to arrest or search is constitutionally reasonable." (*People v. Wolgemuth* (1977), 69 Ill. 2d 154, 166, 370 N.E.2d 1067.) Whether the action taken by the police was constitutionally reasonable must be determined from the totality of the circumstances known to the officers at the time they acted. *People v. Cobb* (1983), 97 Ill. 2d 465, 485, 455 N.E.2d 31.

We believe that *People v. Wolgemuth* (1977), 69 Ill. 2d 154, 370 N.E.2d 1067, is controlling on the facts before us. In *Wolgemuth*, officers with an arrest warrant knocked on defendant's door for 10 minutes. A short time later they knocked for five minutes then entered with a pass key. The officers did not recall whether they announced their authority and purpose as they entered. They walked inside and

found defendant asleep. They noticed pills in a plastic bag and scattered on the floor. The court held that the entry was proper and that the pills were admissible under the "plain view" doctrine.

Here, though the officers did not knock for as long a period as was done in *Wolgemuth*, they did knock for a period sufficient to allow defendant to respond to the knocks. When no such response was forthcoming, given the other *indicia* that defendant was at home, Arp's entry without announcing his authority was constitutionally reasonable. It was reasonable to conclude, from the officers' perspective at that time, that further efforts to notify defendant of their presence would have been superfluous. (See *People v. Wolgemuth* (1977), 69 Ill. 2d 154, 166, 370 N.E.2d 1067.) Thus, the officers' failure to announce their authority and purpose was not enough to render the entry constitutionally unreasonable.

We recognize that the arrest warrant in *Wolgemuth* was for a felony offense whereas in the case at bar the arrest warrant was for a misdemeanor offense. While this distinction has some bearing on whether the entry is reasonable, in view of the greater public interest in apprehension of a felon, we conclude that under the circumstances here, where the entry was peaceable after knocking and receiving no response, and upon reason to believe defendant was present in his residence, this entry to execute a misdemeanor arrest warrant was reasonable.

For the foregoing reasons the order of the trial court granting defendant's motion to suppress is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

SEIDENFELD, P.J., and LINDBERG, J., concur.