**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190638-U

Order filed February 9, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0638 Circuit No. 18-CF-2418 |
| DAVASAE L.B. JORDAN, | ) ) ) | Honorable Carmen Julia Lynn Goodman, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the judgment of the court.
Justices Lytton and Schmidt concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court erred by granting defendant's motion to suppress evidence.

¶ 2    The State appeals the order of the Will County circuit court granting a motion to suppress evidence filed by defendant, Davasae L.B. Jordan. The State argues that the court erred by granting the motion to suppress because the temporary seizure of evidence was supported by probable cause, designed to prevent the loss of evidence, and was limited to the amount of time needed to allow officers to secure a warrant. We reverse and remand.

¶ 3     I. BACKGROUND

¶ 4     Defendant was charged by criminal complaint with criminal trespass to residence (720 ILCS 5/19-4(a)(2), (b)(2) (West 2018)). A warrant for defendant's arrest appears in the record. The warrant was signed by a judge on December 20, 2018. The warrant lists the address of an apartment in Midlothian, Illinois (the apartment) as defendant's last known address.

¶ 5     Thereafter, defendant was charged by supplanting indictment with home invasion (*id.* § 19-6(a)(3), (c)) and criminal trespass to residence (*id.* § 19-4(a)(2), (b)(2)).

¶ 6     Defendant filed a motion to quash arrest and suppress evidence. The motion alleged that officers entered the apartment and arrested defendant without a valid warrant. The motion also alleged that the officers seized items from the apartment before a search warrant had been issued.

¶ 7     At a hearing on the motion to suppress, Paul Rojeck, a deputy sergeant with the Will County Sheriff's Department, testified that he and several other officers went to the apartment on December 26, 2018, to execute an arrest warrant for defendant. They were attempting to arrest defendant for the offense of criminal trespass to residence. The officers knew that defendant's mother resided at the apartment. Rojeck believed that defendant also resided there because it was "the consistent address that showed up during the course of researching [the] case." Rojeck testified that he researched defendant's address by looking at the case report from the incident that led to the charges, driver's license information, criminal history, and various law enforcement databases. The address for the apartment was the address listed on either defendant's driver's license or state identification card. Rojeck could not remember which.

¶ 8     Rojeck and other officers surveilled the location for several hours, but they did not see defendant enter or leave the apartment. The officers then knocked on the door of the apartment loudly and repeatedly, announcing their presence. At that time, approximately six or seven

2

officers were present. They asked defendant to come to the door, but he did not. They heard movement inside the apartment and said that they would breach the door if defendant did not come to the door.

¶ 9        The officers breached the door to the apartment. Rojeck stepped inside the apartment and observed defendant. Defendant's mother, Tara Jordan, was also in the apartment. The officers gave defendant verbal commands. Defendant surrendered himself and followed the officers' orders. The officers took defendant into custody. Rojeck could not recall if Tara was placed in handcuffs, but she was not free to leave until they sorted out what her involvement was.

¶ 10       Defendant was wearing only boxer shorts. Rojeck accompanied Tara to a room that she said was defendant's bedroom to retrieve clothing for defendant. Tara was not in handcuffs at that time. Rojeck accompanied Tara to make sure that she did not retrieve weapons or destroy evidence. Tara identified clothing that belonged to defendant, and Rojeck picked up the clothing. In the bedroom, Rojeck observed a closet in disarray, a bed, a cell phone on the bed, and personal items on a nightstand. Defendant got dressed, and Rojeck took him to jail. Other officers, who were also on the scene, advised Rojeck that they were going to obtain a search warrant. To Rojeck's knowledge, the other officers remained at the apartment after he left.

¶ 11       Detective Tim Perry testified that he was one of the officers who entered the apartment on the day of defendant's arrest. Prior to that day, Perry had information that defendant resided at the apartment based on defendant's prior police contacts and driver's license or state identification information. While the officers were in the apartment, another officer went to defendant's bedroom to obtain clothing for defendant. He advised Perry that there was a cell phone on the bed. Perry observed the cell phone from the hallway. Perry said that the bedroom with the cell phone contained male clothing and footwear. The other bedroom in the apartment

3

appeared to be a woman's bedroom. Perry did not have any specific information from the witnesses in the case regarding the cell phone he observed.

¶ 12    Perry testified that defendant was apprehended at approximately 12 p.m. Perry and another officer remained in the apartment while a third officer obtained a search warrant. They waited in the living room area. Tara was not detained, and she was free to move about the apartment during that time. At one point, the officers observed Tara in possession of the cell phone that had been on the bed. Eventually, Tara placed the cell phone back on the bed. Once the cell phone was no longer in Tara's possession, Perry secured it in order to preserve the evidence on the phone. Perry knew that information could be deleted from a cell phone and that cell phones could be restored to their factory settings, which would destroy the evidence on the phone.

¶ 13    An officer obtained a search warrant for the apartment approximately three to four hours after defendant was removed from the apartment. Perry believed that it was important to get a warrant in order to seize the cell phone. Perry knew from his training, knowledge, and experience that cell phones contain information in photographs, messages, and applications about the location of the phone in the past and "other potentially incriminating evidence that could be useful for the investigation." If defendant had the cell phone in his possession during the commission of the offense, the officers could possibly use it to track his location. After the officers obtained the search warrant, they searched the apartment and seized the cell phone and shoes with mud on them.

¶ 14    Sergeant Micah Nuesse of the New Lenox Police Department testified that he obtained a search warrant for the apartment at approximately 3:55 p.m. on the day of defendant's arrest. Nuesse took the search warrant to the apartment, and the officers executed the warrant at

4

approximately 5 p.m. A copy of the search warrant was admitted into evidence. The warrant authorized the seizure of, among other things, cell phones. The warrant also authorized the forensic analysis of cell phones.

¶ 15 After hearing arguments, the court ruled that defendant's arrest was lawful, but suppressed the cell phone and evidence seized after the arrest. The court found that it was improper for the officers to remain in the apartment for several hours while they sought a search warrant. The court also found that it was improper for the officers to seize the cell phone before obtaining a search warrant. The court noted that the cell phone was not on defendant's person at the time that he was arrested and that the phone "didn't have anybody's name on it." Accordingly, the court suppressed the cell phone. The court suppressed the other evidence seized from the apartment on the basis that it was fruit of the poisonous tree.

¶ 16 The State filed a certificate of substantial impairment, and this appeal followed.

¶ 17 II. ANALYSIS

¶ 18 The State argues that the circuit court erred by granting the motion to suppress evidence because the temporary seizure of the cell phone was supported by probable cause, designed to prevent the loss of evidence, and was limited to the amount of time needed to allow officers to secure a search warrant. In reviewing the court's ruling on a motion to suppress, we give great deference to the circuit court's factual findings and will only reverse those finding if they are against the manifest weight of the evidence. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). We review the court's ultimate legal ruling *de novo. Id.*

¶ 19 In addressing the State's argument, we will first address the threshold issues of whether the officers' entry of the apartment and seizure of the premises pending the issuance of the

5

search warrant was proper. We will then address the State's argument that the officers properly seized the cell phone pursuant to the plain view doctrine.

¶ 20                                   A. Entry of Apartment

¶ 21       Initially, we find that the entry of the apartment by law enforcement officers to effectuate defendant's arrest was lawful. In *Payton v. New York*, 445 U.S. 573, 603 (1980), the United States Supreme Court stated that a search warrant was not required to permit law enforcement officers to enter a suspect's residence to arrest the suspect. Rather, the *Payton* Court stated that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Id.*; see also *People v. White*, 117 Ill. 2d 194, 209 (1987). While the *Payton* Court asserted this rule in *dicta*, it has since "evolved into a tenet of Fourth Amendment jurisprudence." *United States v. Vasquez-Algarin*, 821 F.3d 467, 472 (3d Cir. 2016).

¶ 22       Here, it was proper for the officers to forcibly enter the apartment to arrest defendant. They had a valid warrant for defendant's arrest, and they had information that defendant resided at the apartment. Specifically, Rojeck testified that the address of the apartment was "the consistent address that showed up" while he was researching defendant's address. Rojeck testified that the address for the apartment was stated to be defendant's address on either his driver's license or state identification card. Similarly, Perry testified that he had information that defendant resided at the apartment based on defendant's prior police contacts and his driver's license or state identification information. The officers also had reason to believe that defendant was in the apartment at the time they entered it because they heard movement inside the apartment.

¶ 23    We reject defendant's reliance on *Commonwealth v. Romero*, 183 A.3d 364 (Pa. 2018), a divided opinion of the Pennsylvania Supreme Court, for the proposition that defendant's fourth amendment rights were violated where the police entered the apartment without a search warrant. In *Romero*, the lead opinion concluded that either a search warrant must be issued to enter the residence of the target of an arrest or the arrest warrant must contain a finding of probable cause to believe that the person to be arrested resides at a certain residence. *Id.* at 405. We are not bound to follow the decisions of other states, and we decline to adopt the position taken by the lead opinion in *Romero*. Defendant has cited no Illinois authority imposing such a requirement. We are aware of no Illinois authority requiring law enforcement officers to have anything other than an arrest warrant and reason to believe the suspect is within in order to enter a suspect's residence to execute an arrest. See *People v. Edwards*, 144 Ill. 2d 108, 127 (1991); see also *White*, 117 Ill. 2d at 209; *People v. Bond*, 230 Ill. App. 3d 1086, 1091 (1992); *People v. Benabe*, 180 Ill. App. 3d 235, 243 (1989).

¶ 24    We also reject defendant's argument that, pursuant to *Romero*, the entry of the apartment was unlawful because the police lacked probable cause to believe it was defendant's residence. Defendant cites no Illinois authority for the proposition that the officers were required to have probable cause to believe that the apartment was defendant's residence. However, the record contains such a showing. As we discussed, Rojeck testified that the address of the apartment consistently came up when he was researching the case, and it appeared on a state-issued driver's license or identification card. Defendant notes that Rojeck did not testify as to what year this identification was issued. However, the record shows that Rojeck was not asked what year it was issued or whether it was current. The fact that Rojeck could not remember which form of identification card the address was found on does not render his testimony unreliable.

7

¶ 25     We also reject defendant's argument that, pursuant to *Romero*, the officers lacked "reasonable belief/probable cause" that defendant was present in the apartment at the time that they entered it. The *Payton* Court stated that law enforcement officers must have "reason to believe" the target of the arrest is inside his or her residence in order to enter. *Payton*, 445 U.S. at 603. Federal courts are split on the issue of whether "reason to believe" is tantamount to probable cause or is a lesser standard. See *United States v. Jackson*, 576 F.3d 465, 469 (7th Cir. 2009). Defendant has cited no Illinois authority on the subject. The only Illinois case we have found addressing this issue is *People v. Sain*, 122 Ill. App. 3d 646, 649-52 (1984), which we find to be instructive.

¶ 26     In *Sain*, the court held that, where a valid arrest warrant for the defendant has been issued and the place to be searched is the defendant's own residence, law enforcement officers need only reason to believe that the defendant is inside rather than probable cause. *Id.* at 650. In *Sain*, the arresting officers had a warrant for the defendant's arrest and received a call from the dispatcher stating that the defendant's ex-fiancée had just received a harassing telephone call that she believed came from the defendant's home. *Id.* They proceeded to the defendant's home and observed a light on inside the residence and found the door to be unlocked. *Id.* The *Sain* court held that, even if it were not to consider the information obtained from the defendant's ex-fiancée, there was reason to believe that the defendant was at the residence because it was reasonable to look at the defendant's home as a place he might be found, a light was on in the home, and the door was unlocked. *Id.* at 651-52.

¶ 27     Here, the officers had a warrant for defendant's arrest, had information indicating that defendant resided at the apartment, and heard movement inside the apartment. This situation is comparable to *Sain*, where the officers had a warrant for the defendant's arrest, had information

8

indicating that he lived at a certain residence, and observed an illuminated interior light and unlocked door. Like the light and unlocked door in *Sain*, the movement heard by the officers in this case did not indicate that a particular individual was in the residence. However, like in *Sain*, the officers had information indicating that defendant resided at the apartment and that someone was present inside. Accordingly, like in *Sain*, the officers had reason to believe defendant was inside the apartment.

¶ 28                                B. Temporary Seizure of the Premises

¶ 29        We also find that, under the holding of *Illinois v. McArthur*, 531 U.S. 326 (2001), the temporary seizure of the premises was permissible. In *McArthur*, a witness reported that she saw the defendant conceal a controlled substance underneath the couch in the trailer where she and the defendant lived. *Id.* at 329. An officer went to obtain a search warrant. *Id.* Another officer told the defendant that he could not reenter the trailer unless a police officer accompanied him while they obtained the warrant. *Id.* The defendant reentered the trailer several times while an officer watched from the door. *Id.* An officer obtained a search warrant approximately two hours later. *Id.* The officers searched the trailer and found cannabis and paraphernalia. *Id.*

¶ 30        The United States Supreme Court held that the warrantless seizure of the trailer was not *per se* unreasonable because it involved a plausible claim of exigent circumstances. *Id.* at 331. The Court found that the restriction was reasonable, and therefore lawful, because the police (1) had probable cause to believe the trailer contained evidence of a crime and contraband, (2) had good reason to fear that the defendant would destroy the drugs before they could return with a warrant because he may have suspected an imminent search, (3) made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy, and (4) imposed the restraint for a limited period of time. *Id.* at 332-33. The Court noted that it had "found no

9

case in which [it had] held unlawful a temporary seizure that was supported by probable cause and was designed to prevent the loss of evidence while the police diligently obtained a warrant in a reasonable period of time." *Id.* at 334.

¶ 31　　　Here, like in *McArthur*, the temporary seizure of the apartment and cell phone was reasonable. Defendant had just been arrested pursuant to an arrest warrant for criminal trespass to a residence, and officers were attempting to obtain a search warrant for the apartment. The officers had probable cause to believe that the apartment contained evidence of the crime of defendant's arrest, including the cell phone. As in *McArthur*, the officers had good reason to believe that Tara could destroy potential evidence if they did not secure the apartment, as she may have suspected that a search was imminent. Once the officers observed Tara with the cell phone, they had good reason to believe that she could destroy potential evidence on the phone. Perry testified that he knew that information could be deleted from a cell phone and that a cell phone could be restored to factory settings. The officers made reasonable efforts to reconcile their law enforcement needs with privacy concerns. They merely waited in the living room area of the apartment while another officer obtained the search warrant. Tara was not detained and was free to move about the apartment. They did not search the cell phone prior to obtaining a warrant, and they seized it only after they observed Tara holding it. The seizure of the premises was for a limited period of time—approximately four to five hours. Under these circumstances, the temporary seizure of the premises was reasonable.

¶ 32　　　　　　　　　　　　　　　C. Plain View

¶ 33　　　The State argues that the seizure of the cell phone prior to obtaining a warrant was permissible under the plain view doctrine. Under the plain view doctrine, law enforcement officers may seize an object without a warrant if "(1) the officers are lawfully in a position from

which they view the object; (2) the incriminating character of the object is immediately apparent; and (3) the officers have a lawful right of access to the object." *People v. Jones*, 215 Ill. 2d 261, 271-72 (2005). We find that the three prongs of the plain view doctrine were satisfied in this case.

¶ 34                                    1. Lawful Vantage Point

¶ 35        In the instant case, the officers viewed the cell phone from a lawful vantage point. As previously discussed, the officers entered the apartment lawfully to arrest defendant pursuant to a valid arrest warrant. *Supra* ¶¶ 21-22 Once the officers were in the apartment, it was reasonable for an officer to accompany Tara to defendant's bedroom to obtain his clothing for the purposes of officer safety. The arrest occurred in December, and defendant was wearing only his boxer shorts at the time the officers entered the apartment. It was reasonable for Rojeck to accompany Tara to ensure that she did not retrieve weapons while obtaining clothing for defendant. It was at that point that Rojeck viewed the phone on the bed. Accordingly, the officers viewed the cell phone from a lawful vantage point.

¶ 36                                    2. Lawful Right of Access

¶ 37        As previously discussed, it was lawful for some officers to remain in the apartment while others obtained a warrant. *Supra* ¶ 31. Accordingly, the officers had a lawful right of access to the cell phone at the time of the seizure.

¶ 38                              3. Incriminating Nature Immediately Apparent

¶ 39        We also find that the incriminating nature of the cell phone was immediately apparent because the officers had probable cause to believe it was evidence of a crime.

¶ 40        The plain view doctrine requires probable cause to permit a seizure. *Jones*, 215 Ill. 2d at 272. "[I]f police lack probable cause to believe that an object in plain view is contraband without

11

conducting some further search of the object, *i.e.*, if the incriminating character of the object is not immediately apparent, the plain view doctrine cannot justify the seizure." *Id.* at 272. However, "[t]he 'immediately apparent' or 'probable cause' element does not require a law enforcement officer to ' "know" that certain items are contraband or evidence of a crime.' " *Id.* at 277.

> "[P]robable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' [citation], that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

"[W]hat constitutes probable cause for searches and seizures must be determined from the standpoint of the officer, with the officer's *skill and knowledge* being taken into account." (Emphasis in original.) *Jones*, 215 Ill. 2d at 275.

¶ 41 Here, while the officers did not know that the cell phone contained evidence of the offense defendant was charged with committing, they had probable cause to believe that it did. That is, the officers had facts available to them that would warrant a reasonable individual to believe that the phone may be useful as evidence of a crime. The officers located the cell phone on the bed in a room that Tara identified to them as defendant's bedroom. Perry testified that, based on his training, knowledge, and experience, cell phones contain information in photographs, messages, and applications about the location of the phone in the past and "other potentially incriminating evidence that could be useful for the investigation." Perry stated that the officers could possibly use the cell phone to track defendant's location at the time of the

12

charged offense if he had it with him during the commission of the offense. We note that defendant was charged with the offense of criminal trespass to residence. Defendant's location at the time of the offense would have been relevant evidence concerning this charge. We also note that a few hours after the seizure, the court issued a search warrant for cell phones found in the apartment upon finding that probable cause existed. Defendant has not challenged the validity of this warrant.

¶ 42                              III. CONCLUSION

¶ 43        For the foregoing reasons, the judgment of the circuit court of Will County granting defendant's motion to suppress is reversed. The matter is remanded for further proceedings.

¶ 44        Reversed and remanded.