THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GREGORY WILLIAMS *et al.*, Defendants-Appellants.

First District (2nd Division)    Nos. 80-965, 80-966, 80-981 cons.

Opinion filed September 1, 1981.

Ralph Ruebner and Phillip J. Zisook, both of State Appellate Defender's Office, of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Constantine N. Bastounes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Defendants Gregory Williams, Richard Williams, and Daryl Nedd were each charged by indictment with rape, deviate sexual assault, armed robbery, and three counts of aggravated kidnapping. (Ill. Rev. Stat. 1979, ch. 38, pars. 11—1, 11—3, 18—2, and 10—2.) A jury found defendants guilty of rape and aggravated kidnapping. The Williams brothers were sentenced to two 10-year terms each, and Nedd was sentenced to two 8-year terms. Defendants ask this court to consider whether (1) the State failed to prove them guilty beyond a reasonable doubt, (2) they were denied a fair trial as a result of certain allegedly prejudicial comments, and (3) the circuit court erred in admitting certain evidence at trial.

In the early morning hours of June 3, 1979, defendants were arrested and charged with the rape of complainant. Testimony at trial indicates complainant worked as a barmaid at a cocktail lounge located near 73d Street and Racine, Chicago. Her boyfriend Coleman Lockett, regularly came to the lounge at the close of business to walk complainant through a residential area to her home located near 71st Street and Ada. On June 3, Lockett and complainant left the lounge at 3:15 a.m.

Complainant testified that as they walked north on Racine, a car drove by them and stopped several yards beyond their position. The car was then driven in reverse until it reached the couple. Two men exited the

car and approached them. Complainant held out her tips for the evening, but no one took the money. Lockett indicated aloud that he knew one of the men. That man, later identified as Richard Williams, disclaimed any acquaintanceship. Richard displayed a handgun, pointed it at Lockett, and told the latter to be silent, turn around, start walking, and not to look back. Complainant stated Richard took her money, grabbed her arm, and forced her into the back seat of the waiting car. The other man, later identified as Daryl Nedd, entered the front passenger seat of the car. The driver, Gregory Williams, then caused the car to speed away.

After driving several blocks to a parking lot near a high school, complainant testified, Richard displayed his handgun at her side and told her she would die if she did not cooperate with him. He told her to kiss him. She was thereafter forced to perform fellatio upon Richard. He then had intercourse with her. Richard then climbed over the car's front seat and Daryl Nedd climbed into the rear. Nedd held a handgun while complainant was forced to perform fellatio upon him. Nedd then had intercourse with her. Meanwhile, Richard continued to direct his handgun toward the backseat area. After this sexual attack, Nedd exchanged places with Gregory who climbed into the backseat area where complainant was again forced to perform fellatio and engage in intercourse. Richard again forced complainant to engage in intercourse after Gregory's attack. Complainant was thereafter permitted to dress. Richard refused to set complainant free and threatened to seek her out if she informed police. Richard then gave complainant $10 so he could say he "bought some."

Nedd started the car and drove in a westerly direction. As a police car approached defendants' car, Nedd drove faster. Richard placed the two handguns into complainant's purse. When the car was finally curbed, Richard got out and declared complainant was "his woman." A policeman separated complainant from Richard when she stated she was not Richard's girlfriend. She then gave the purse to an officer.

Complainant was immediately transported to a nearby hospital where she informed the emergency room physician she had been raped. His examination revealed she suffered lacerations and localized bleeding in her vaginal wall.

Lockett testified that after the car sped away with complainant, he ran to Terry Cooper's residence. Cooper, complainant's sister-in-law, testified she heard Lockett banging on her door at about 3:30 in the morning of June 3rd. When she opened the door, Lockett appeared scared and upset. He asked her to call the police because three men with guns had just taken complainant.

Police Officer Melvin Darby testified that at about 3:30 a.m.[1] he

---

[1] Darby testified on recross-examination that he received a "flash message" regarding the incident at about 4:10 that morning.

answered a radio call indicating a green Chevrolet was involved in a kidnapping. After he arrived at Cooper's residence, Lockett told him he recognized one of the kidnappers as being from around the area of Englewood High School, about a dozen blocks from the kidnapping scene. Darby and Lockett then drove toward that area. As Darby's patrol car approached the intersection of 60th Street, he observed a vehicle matching the description given by Lockett. That car proceeded westbound until it suddenly increased its speed and turned left on Normal Street. Darby illuminated his Mars lights and gave chase with the siren on. The suspect car accelerated to 50 miles per hour while in a 30-mile-per-hour speed zone. The chase continued for a couple of blocks and then defendants' car stopped. After the car's occupants were ordered to exit, Darby approached complainant. He testified she was "very shaken up, * * * she was crying, you could see tears in her eyes. * * * She seemed to be in a daze." Richard grabbed her, said she was "his lady," and started to walk away from the scene. He and the other defendants were arrested when complainant denied she was his girlfriend. Complainant handed her purse to the police, telling them that defendants put the guns in her purse.

Daryl Nedd and Richard Williams both testified for the defense. They each stated that they left a disco lounge prior to encountering complainant at 3 a.m. She allegedly flagged them down as they drove past her. After circling the block once, they returned to her location. Nedd and Williams got out of the car. According to defendants, Lockett indicated complainant was available as a prostitute. Defendants stated they rejected a $20 charge asked for each man and negotiated a charge of $10 each. Lockett then indicated defendants could take complainant in their car to a vacant lot across the street. Defendants stated they did not like the high visibility of that lot, so instead they took complainant to a lot near Englewood High School. Defendants testified complainant engaged in sexual intercourse pursuant to their agreement. Afterward, Richard and complainant took a 20-30 minute walk around the area. According to Richard, they talked about complainant's desire to find a new boyfriend. When Richard and complainant returned to the parked car, he told her they would take her home after they got some change for his large denomination bills at an all-night gas station located east of the car. According to Nedd, when they first saw the police car, they were going westbound because that was the only way he knew to get to the station. Richard testified they were going westbound to take Gregory to his home. Both denied the car was speeding.

## I

We first consider defendants' challenge to the sufficiency of the

evidence. Defendants point to alleged inconsistent testimony of both Lockett and complainant and contend the absence of evidence of external physical injury to complainant compels the conclusion that she consented as a prostitute. Defendants argue that they produced credible, consistent testimony which exculpated them. They conclude that in light of their acquittals on charges of armed robbery and deviate sexual assault, and because various inconsistencies arose in the testimony by the State's witnesses, the State proffered evidence insufficient to prove them guilty beyond a reasonable doubt of rape and aggravated kidnapping.

To obtain a conviction for rape, the complainant's testimony must be either clear and convincing or independently corroborated. (*People v. Thomas* (1981), 96 Ill. App. 3d 443, 450, 421 N.E.2d 357; *People v. Graham* (1978), 60 Ill. App. 3d 1034, 1045, 377 N.E.2d 179.) Conflicts in testimony create questions of the credibility of the witnesses, and of the weight, if any, to be given to particular evidence. These issues are for the jury to determine. (*People v. Novotny* (1968), 41 Ill. 2d 401, 411-12, 244 N.E.2d 182; *People v. Secret* (1977), 54 Ill. App. 3d 917, 920, 369 N.E.2d 1329, *aff'd* (1978), 72 Ill. 2d 371, 381 N.E.2d 285.) Here, complainant's testimony was clear and convincing. She testified in a positive and consistent manner regarding all essential elements of the rape and kidnapping. Minor variances do not detract from the reasonableness of complainant's story (see, *e.g.*, *People v. Payton* (1980), 84 Ill. App. 3d 181, 183, 405 N.E.2d 18) and exclusively reflect upon the issue of her credibility (*People v. Thomas*; *People v. Hooker* (1981), 96 Ill. App. 3d 127, 132, 421 N.E.2d 301). We cannot say that the State's evidence was contrary to the jury's verdict or caused a reasonable doubt as to the guilt of the accused.

In addition, the mere fact that defendants were found not guilty on some charges does not indicate the evidence was insufficient to support convictions for rape and aggravated kidnapping. (See, *e.g.*, *People v. Thomas* (1981), 96 Ill. App. 3d 443, 449.) Furthermore, complainant's testimony was sufficiently corroborated so as to establish overwhelming evidence of defendants' guilt. Lockett testified as to the kidnapping. Cooper testified as to Lockett's immediate call for police aid. Darby testified as to defendants' flight from the police (see, *e.g.*, *People v. Thomas* (1981), 96 Ill. App. 3d 443, 452) and defendants could not consistently account for their travel in a direction opposite their stated destination. Since evidence of physical injury to the victim's body is not necessary for conviction (*People v. Thomas*), the absence of external physical injury does not affect the State's evidence. The evidence that was presented at trial was, we believe, sufficient to establish beyond a reasonable doubt that defendants are guilty of the rape and aggravated kidnapping of complainant.

924

## II

Defendants also contend the assistant state's attorneys who prosecuted this case made remarks constituting error.[2] We agree. Defendants, however, believe these errors require reversal for a new trial. We disagree.

■■ The prosecution made the following statements during the course of trial: defendants were "liars," "rapists," and "perverts"; defendants were disgusting animals; defendants were beasts; and defendants' counsel asked disgusting questions of complainant. These comments amount to error. They reach beyond the bounds of propriety. When considered as part of the entire record, these errors are not sufficient to require reversal. The trial took place over several days. The evidence was overwhelming as to defendants' guilt. We believe beyond a reasonable doubt that the errors failed to contribute to the conviction. (See, e.g., *People v. Baptist* (1979), 76 Ill. 2d 19, 29-30, 389 N.E.2d 1200.) Absent a showing of prejudice, we conclude the comments were harmless errors.

■■ Defendants also complain that a prosecutor suggested the only reason one defense counsel represented two of the defendants was to receive a fee. We believe this suggestion was improper. However, it was invited by defense counsel's improper expression of his personal belief in defendants' version of the events. Accordingly, we conclude no prejudice resulted and the error was harmless.

## III

■■ Lastly, defendants complain that certain evidence was improperly admitted at trial. Defendants complain evidence of Lockett's statement to Cooper regarding the kidnapping constitutes inadmissible hearsay. This issue was not addressed in the written post-trial motions. It is therefore not preserved for review. *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.

■■ Defendants also complain that the trial court improperly permitted evidence of complainant's medical treatment subsequent to the rapes. Defendants contend the evidence was not linked to the offenses charged and was prejudicial. Our review of the record indicates that the assistant state's attorney did not elicit testimony regarding a connection between subsequent hospital treatment and the rapes. Complainant testified on direct examination only that she had subsequent visits to the hospital. Defendant Nedd's counsel, however, did elicit connecting testimony regarding the rapes. Complainant testified on cross-examination that she went to the hospital two months after the rapes because she suffered

---

[2] Several remarks complained of on appeal were not objected to at trial and were not referred to in defendants' post-trial motion. Defendants have waived review of those remarks. *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856; *People v. Taylor* (1974), 25 Ill. App. 3d 396, 406-07, 323 N.E.2d 388.

vaginal bleeding caused by the rough treatment she received during the rapes. Such evidence is therefore relevant to the element of force included in the offense of rape. (See *People v. Weaver* (1972), 8 Ill. App. 3d 299, 306, 290 N.E.2d 691.) Since the evidence was connected to the offenses charged, we find no error.

■■ Testimony by complainant regarding subsequent psychiatric treatment was not, however, connected by other evidence to the offenses charged.[3] It was therefore error to admit that testimony. (See generally *People v. Gillman* (1980), 91 Ill. App. 3d 53, 60, 414 N.E.2d 240.) Based on our review of the record, we believe this evidence was not prejudicial to defendants. In light of the overwhelming evidence of defendants' guilt, we believe the error was harmless.

Accordingly, we affirm defendants' convictions.

Affirmed.

STAMOS and PERLIN, JJ., concur.

---

[3] The evidence regarding psychiatric treatment subsequent to the rapes was elicited on direct examination as follows:

> "Q: From the time of this rape until today's date, have you been seeing a psychiatrist and a psychologist?
> A [Complainant]: Yes."

Defense counsel made no objection to this exchange.