THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DAVID ALEXANDER, Defendant-Appellant.

First District (2nd Division)   No. 82—976

Opinion filed August 7, 1984.

Steven Clark and Bradley S. Bridge, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Bruce A. Cardello, and Denise O'Malley, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PERLIN delivered the opinion of the court:

Defendant, David Alexander, was convicted by a jury of rape (Ill. Rev. Stat. 1979, ch. 38, par. 11—1), indecent liberties with a child (Ill. Rev. Stat. 1979, ch. 38, par. 11—4(a)(1)) and unlawful restraint (Ill. Rev. Stat. 1979, ch. 38, par. 10—3(a)). He was sentenced concurrently to 30 years for rape, 15 years for indecent liberties and 3 years for unlawful restraint.

On January 8, 1981, defendant was charged with the aforesaid

crimes, as well as aggravated battery, all arising from an incident occurring on December 25, 1980. In February 1981 defendant's attorney orally moved the court to order a "Psychiatric Institute Examination" of defendant "for both fitness to stand trial and sanity at the time of the offense." Defense counsel alleged no factual basis for his request. The State advised that it had no objection thereto, and the court granted defendant's motion.

On March 31, 1981, defense counsel and the assistant State's Attorney stipulated to the findings and conclusions of defendant's examining psychiatrist, Dr. Stikes, which were to the effect that the defendant was not fit to stand trial "because of a mental condition associated with alcohol." The court thereupon found that the defendant was unfit to stand trial and that there was a substantial probability that the defendant, if provided with a course of treatment, would attain fitness within one year. The court then ordered defendant placed in the custody of the Illinois Department of Mental Health for treatment, and pursuant to sections 104—16 and 104—17 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, pars. 104—16, 104—17), ordered the Department to report to the court within 30 days its opinion as to the probability of defendant's attaining fitness within one year.

On May 21, 1981, a hearing was held on defendant's restoration to fitness. The State and defense counsel stipulated to the qualifications and reports of two psychiatrists who had examined defendant. Both found him fit to stand trial. The court accepted the stipulations and then questioned defendant as to whether he felt he was fit to stand trial. Defendant answered affirmatively, and thereupon the court found defendant fit to stand trial. Prior to trial the court granted the State's motion to nolle prosequi the charge of aggravated battery.

At trial, the alleged victim of the assaults, R.A.S., testified to the following: On December 25, 1980, she was 13 years old, the oldest of six brothers and sisters. Defendant was not her biological father but was the father of four of her brothers and sisters. At about noon on that Christmas Day she was watching television when defendant came in the front door and asked if her mother was at home. She was not. Defendant then left, and later returned. He asked R.A.S. if she wanted to go to the store with him. She said she would, and they left. After walking a few blocks, defendant walked back toward the rear of the family home from whence they had come.

The rear door of the home was usually held shut by a wood board, but the board was not there on that day. She and defendant went up

the back stairs, through the kitchen and up to the attic. In the attic, defendant hit R.A.S. when she initially refused his request that she remove her boots. Defendant then removed his coat and laid it on the floor. When R.A.S. refused to approach him, he again hit her. Defendant then grabbed her and told her to remove her coat. She was struck again and, at defendant's command, she removed her pants. Defendant removed a string from her blouse and tied it around her neck. He placed her on her back and removed his clothing. He struck her again and then had intercourse with her.

When defendant fell asleep, she gathered her clothing and ran downstairs. In the kitchen, she knocked over a door which was leaning against a kitchen wall. Two of her sisters, A.S. and S.S., then came into the room. R.A.S. was at that time dressed only in a shirt and bra; she told her sisters she had accidentally urinated in her pants. She then put on the rest of her clothing and went to the house of her friend, Cynthia W. She told Cynthia W. and Cynthia W.'s mother that she had been raped. The mother called the police. The police took R.A.S. back to her home where she retrieved her coat from the attic. The police then took her to a hospital. On the way to the hospital, she saw and identified defendant, who was then arrested.

On cross-examination, R.A.S. admitted she did not get along with defendant. She disliked the fact that defendant and her mother fought. On December 25, 1980, the two had fought, and the mother had left; R.A.S. was angry at defendant for forcing her mother out of the house that day. R.A.S. admitted that she had told the police that she had sex with defendant on about 10 occasions since she was nine years old. She had not reported those previous intimacies to anyone other than her grandmother, who lived in Alabama. She did not tell her brothers or sisters, although she admitted she was fearful that defendant might take advantage of her sisters.

The State's next witness was S.S., who testified: She was R.A.S.'s sister and defendant's daughter. On December 25, 1980, defendant came to the house, left, and then returned again. He then left with R.A.S. A short time later, S.S. heard a door in the kitchen fall. S.S. and her sister, A.S., went into the kitchen. R.A.S. was standing there wearing a shirt but no pants or underwear. R.A.S. said that she had wet herself. R.A.S. then put on her pants and left the house.

Cynthia W.'s mother testified that on December 25, 1980, R.A.S. came to her house and told her she had been raped.

Chicago police officer Lynn Laskey testified that on December 25, 1980, she went to Cynthia W.'s house and spoke with R.A.S. They

then drove to R.A.S.'s house and looked for evidence, particularly a blouse string, which they did not find. On the way to the hospital, they saw defendant, who was placed under arrest.

The parties stipulated: R.A.S. was examined at the hospital; the resultant smears and slides, and her clothing, were taken to the Chicago crime lab and there examined by Sedgewick Higgenbottom, a lab employee.

Bernadette Kwak, a microanalyst with the crime lab, testified for the State: Mr. Higgenbottom, now deceased, had examined the smears, slides, pants, panties and a vaginal specimen involved. He found spermatozoa on the vaginal smear, but neither sperm nor semen on the other articles of clothing. Ms. Kwak also found sperm on one of the smears as well as on a second smear on which Higgenbottom had not found sperm. The State then rested.

Defendant testified on his own behalf: On December 25, 1980, he returned to his house in the morning and asked the children if their mother was at home. When informed she was not, he left. He returned about an hour later, and he and R.A.S. went to the store to buy bread. On the way to the store he gave to a man on the street a $5 bill for which he received five singles in change. He gave R.A.S. $1 and they then went in different directions. He did not give R.A.S. the entire $5 because she had a habit of overspending.

Defendant stated that he then met a friend of his, Willie, and agreed to sell Willie a ladies' watch for $7. Defendant returned home to get the watch. He entered the back door of the home and observed his daughters, S.S. and A.S., making peanut butter sandwiches. Defendant remained fully dressed all morning. He denied touching, fondling or raping R.A.S.

After closing argument and deliberations, the jury returned guilty verdicts of rape, indecent liberties and unlawful restraint. Following the sentencing hearing, the court imposed the aforesaid sentences, from which defendant appeals.

Defendant contends that reversible error occurred below at his restoration hearing on the ground that because the parties stipulated to the two psychiatric reports, there was no "adversarial" hearing, relying on the decision of *People v. Greene* (1981), 102 Ill. App. 3d 639, 430 N.E.2d 219. In *Greene*, the defendant was initially found unfit to stand trial. At a restoration hearing to determine if defendant was then fit, no evidence was introduced; instead, the parties stipulated that two psychiatrists who had examined defendant would conclude he was fit for trial. The State and defense counsel then stipulated to the findings in the psychiatric reports and to "the fact that

the defendant is fit for trial." The *Greene* court reversed for a new restoration hearing, holding that such stipulation to the fact of defendant's fitness afforded "no fitness hearing at all" and manifested no exercise of discretion by the court.

However, in the recent decision in *People v. Lewis* (1984), 103 Ill. 2d 111, our supreme court distinguished the factual situation in *Greene* and that which we find to exist in the instant case. The supreme court held:

> "We find the stipulations in *Reeves* and *Greene* and those entered into here clearly indistinguishable. In *Reeves* the parties stipulated to the conclusion that the defendant had 'recovered from said insanity to the degree that he can now co-operate with his counsel and enter a plea.' (412 Ill. 555, 557.) In *Greene* defense counsel stipulated to 'the findings of the two psychiatrists as contained in the reports and *** to the fact that the defendant is fit for trial.' (102 Ill. App. 3d 639, 641.) Here, however, it was stipulated that, if called to testify, qualified psychiatrists who had examined defendants would testify that in their opinions the defendant was mentally fit to stand trial.
>
> The stipulations were not to the fact of fitness, but to the opinion testimony which would have been given by the psychiatrists. Upon considering these stipulations and personally observing defendants, the circuit court could find defendants fit, seek more information, or find the evidence insufficient to support a finding of restoration to fitness. The circuit court recognized that, as stated in *People v. Bilyew* (1978), 73 Ill. 2d 294, 302, '[t]he ultimate issue was for the trial court, not the experts, to decide.' We find, therefore, that the circuit courts did not err in considering the stipulations regarding the psychiatrists' opinions as to the defendants' fitness. We note parenthetically that neither at trial nor on appeal has the contention been made that there was a *bona fide* doubt as to defendants' fitness—the attacks are based solely on the allegedly improper stipulations." *People v. Lewis* (1984), 103 Ill. 2d 111, 115-116.

■ In our opinion, the procedures employed in defendant's restoration hearing in the instant case are similar to those upheld in *Lewis*. The parties did not stipulate to the "fact" of defendant's fitness, but to the psychiatrists' testimony. We therefore reject defendant's contention that because of the stipulation entered into, his restoration hearing was infirm.

■ In a related argument, defendant contends that the report of one of the psychiatrists who examined him fails to comport with the

statutory requirements of section 104—15 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 104—15). That statute requires that the examining physician's report to the court "shall include" information including "a diagnosis and an explanation as to how it was reached and the facts upon which it is based," "a description of the defendant's mental or physical disability, if any; its severity; and an opinion as to whether and to what extent it impairs the defendant's ability to understand the nature and purpose of the proceedings against him or to assist in his defense or both." Citing *People v. Harris* (1983), 113 Ill. App. 3d 663, 447 N.E.2d 941, defendant contends one of the reports here used failed to include the statutorily required information and thus precluded the trial court from making an independent evaluation of the defendant's mental condition. While we agree with defendant that one of the reports is in fact violative of the statutory requirements, we find that under the facts of this case no reversible error occurred.

The most significant difference between the factual situation in *Harris* and that presented here is that in the case *sub judice* a second psychiatric report was in fact provided to the trial court, and this second report is not challenged as deficient. Because here the trial court had before it a second report which complied fully with the statutory mandate, the shortcoming of the first report is not a basis for reversal. The statutory language clearly evidences that a single report will suffice. "The ·*person or persons* conducting an examination of the defendant ***" (Ill. Rev. Stat. 1979, ch. 38, par. 104—15(a)); "The court shall conduct a hearing to determine the issue of defendant's fitness within 45 days of receipt of the final written report of the *person or persons* ***." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 38, par. 104—16(a).

We also believe other facts in this record differentiate this case from *Harris*. These distinguishing factors include that in *Harris* the defendant had a history of psychological treatment whereas this defendant did not. In *Harris* the defendant attempted suicide by eating glass and metal, thus raising a *bona fide* doubt as to Harris' fitness. Here, there are no facts indicating that there existed a *bona fide* doubt as to defendant's fitness to stand trial at the time of the restoration hearing. If defense counsel believed defendant was unable to assist in his defense or to understand the nature of the proceedings, it is presumed that counsel could have so advised the court. (See *People v. LaBoy-Rivera* (1984), 126 Ill. App. 3d 197.) For the aforesaid reasons, we find no reversible error based on the omissions of one of the psychiatric reports admitted into evidence at

defendant's restoration hearing.

Defendant next contends that he was denied a fair trial when, in closing argument, the prosecutor called the defendant a "beast" and an "animal."

The State responds that any error was waived because the defendant did not object to the statements nor specify them in his post-trial motion. Even if we consider them, the State argues, the comments in question were based on the evidence and within the wide latitude afforded during closing argument and a prosecutor's right to comment on the evidence. Any error was, in the State's view, harmless because the evidence of defendant's guilt was overwhelming.

■■ While we hold that defendant has waived this issue for review, we would, under these circumstances, find the prosecutor's statements to be harmless error. While the State may comment unfavorably on the defendant and the evil results of crime (*People v. Alvarez* (1981), 93 Ill. App. 3d 111, 416 N.E.2d 1217), he may not thereby attempt to inflame the passion of the jury nor arouse the prejudice of the jury against the defendant. (*People v. Wallace* (1981), 100 Ill. App. 3d 424, 426 N.E.2d 1017.) While the characterizations of defendant by the prosecutor in the present case were clearly improper, we consider them harmless. See *People v. Williams* (1981), 99 Ill. App. 3d 919, 425 N.E.2d 1321.

Defendant next argues the State improperly vouched for the credibility of its witnesses and placed the credibility of its office behind the witnesses. Defendant complains of the following: In closing argument, the prosecutor told the jurors that it was defendant's theory that R.A.S. had duped everyone, including the prosecutors. The prosecutor urged the jury to believe R.A.S. because "she told the truth." The prosecutor also stated that he was not part of an effort to "frame" defendant.

■■ While it is clear that a prosecutor may not personally vouch for the credibility of the State's witnesses (*People v. Valdery* (1978), 65 Ill. App. 3d 375, 381 N.E.2d 1217), we do not find that the prosecutor did so here. The remarks were proper comments upon the evidence and fair inferences drawn therefrom. Further, defendant may not invite responses to his own remarks and then claim prejudice therefrom. Here, the defense attacked the credibility of R.A.S. throughout the trial, from opening statements to cross-examination and closing argument, stating that her testimony was "made up," "unbelievable" and "rehearsed." Defense counsel also strongly implied that the other witnesses appearing for the State were lying. Under these circumstances we conclude the State's responses were not

improper. See *People v. Anderson* (1981), 95 Ill. App. 3d 492, 420 N.E.2d 830; *People v. Dykes* (1978), 66 Ill. App. 3d 403, 383 N.E.2d 1210.

Defendant finds error in the prosecutor's statement in closing argument that in order to believe the defendant's testimony it would be necessary to "disbelieve each of the state's witnesses." Defendant alleges this statement to be untrue and that defendant's testimony was "not at all" inconsistent with some of the State's witnesses and "only marginally inconsistent" with others. The State argues that its statement is in fact "absolutely" true, and even if not, any resultant error was harmless. We consider the prosecutor's statement improper. It was inaccurate to state that it would be necessary to disbelieve each State's witness in order to believe defendant.

■ While a prosecutor may comment on the credibility of the witnesses, such comments must be based on the evidence, or reasonable inferences therefrom. (*People v. Childs* (1981), 101 Ill. App. 3d 374, 428 N.E.2d 185.) Although we are aware that a similar statement has been held to be reversible error (*People v. Cole* (1980), 80 Ill. App. 3d 1105, 400 N.E.2d 931), we decline to so hold under the circumstances of this case where defendant's testimony did, in fact, directly contradict that of the significant State witness. While the prosecutor's argument that it was necessary to disbelieve each of the State's witnesses in order to believe the defendant was not wholly accurate, we do not believe the jury was misled thereby, and find no reversible error. *People v. Wallace* (1981), 100 Ill. App. 3d 424, 426 N.E.2d 1017.

Defendant next argues that the State improperly used impeachment evidence for substantive purposes. During the victim's cross-examination by defense counsel, he elicited testimony from her that defendant had had sexual relations with her on approximately 10 occasions over the previous four years and that she never reported those previous attacks to anyone save her grandmother, who resided in Alabama. In closing argument, defense counsel contended that R.A.S.'s testimony that she had been previously attacked by defendant and failed to report those attacks, was "an inherently unbelievable story." Defendant maintains that R.A.S.'s failure to report the previous attacks "contradicted" her report on this occasion and thus "impeached" her. Defendant complains of the State's closing argument wherein it noted the evidence of previous attacks, stated that defendant had "forced her to submit, as he had done before"; that the victim "was raped since she was nine years old" and suggested why R.A.S.'s failure to report the previous incidents was reasonable.

■ The State responds, first, that the issue is waived, as defend-

ant did not object at trial nor include this issue in his post-trial motion. While we hold that defendant has waived this issue, even were we to consider it, we would find no reversible error under the present facts. Our review of the record does not demonstrate any misuse by the State of the evidence introduced by the defendant. We do not agree with defendant that this evidence of the failure to report previous rapes is "impeaching." There is no requirement that a rape victim make a complaint. (*People v. Trejo* (1976), 40 Ill. App. 3d 503, 352 N.E.2d 68.) Nor is her credibility undercut by her previous failures to do so. Moreover, the State's reference to this testimony does not indicate an effort to convict defendant on the basis of the alleged prior rapes. Rather, the State appears to have been appropriately commenting on the evidence and, more specifically, responding to defendant's argument that it was incredible for R.A.S. not to have reported the previous incidents.

Defendant next contends he was denied a fair trial when, during closing argument, the State allegedly asserted facts not in evidence and misstated evidence. In the first cited instance, the prosecutor stated that defense counsel had not cross-examined the victim's sister, S.S., because she "told the truth." Defendant states such fact was not in evidence.

The State responds that this was a "reasonable inference" to be drawn from the defendant's failure to cross-examine S.S. and that the comment was also proper as a response to defendant's attack on S.S. as an "imaginative child" and his implication that S.S. had made up her testimony. In our opinion, defendant has waived consideration of this issue by failing to object to them and by not specifying them in his post-trial motion. Even if we were to consider them, we would find any error in this single statement to be harmless.

Defendant next asserts that the State's closing argument misstated the evidence when the prosecutor, in summarizing S.S.'s testimony, contended that she had testified that when she first saw R.A.S. after the incident, R.A.S. was nude from the waist down. In fact, S.S.'s testimony was that she did not see the "bottom part" of R.A.S. at that time; it was not until a short time later that she saw that her sister was nude from the waist down. Although we find that defendant has waived this allegation of error, if we were to consider it, we would find no error in this minor discrepancy.

Defendant next argues that the court erred in instructing the jury with a modified Illinois Pattern Jury Instruction (IPI), Criminal, No. 3.14 (2d ed. 1981), which read:

"Evidence has been received that the defendant has been in-

volved in offenses other than that charged in the information. This evidence has been received solely on the issue of the defendant's *intent, motive* and *design.* This evidence may be considered by you only for the limited purpose for which it was received." (Emphasis added.)

Defendant contends the instruction was totally improper as to the rape charge and "overbroad" as to the indecent liberties charge in that "[w]hile not relevant as to motive or design, the evidence was, according to Illinois law, relevant as to intent."

The State responds that the defendant has waived this issue in failing to object to this instruction on the grounds now raised or to specifically assert it in his post-trial motion. Even were we to consider the error, the State maintains it was supported by the evidence and thus proper. The State cites cases in which this instruction was upheld in sex-crime prosecutions when the instruction stated that the evidence of other crimes could be considered for the purpose of showing the "relationship," "familiarity" or "intimacy" between the parties or the defendant's "motive" or "guilty knowledge"; the State fails, however, to cite a factually similar case wherein the instruction was used to permit consideration of evidence of other crimes for the purpose of showing defendant's "design." Neither do we believe defendant's "motive" was here in issue. We believe the instruction improperly included the words "design" and "motive." Although we find defendant has here waived consideration of this issue, even were we to consider it, we believe any error in the inclusion of the words "motive" and "design" in the instruction was not reversible. *People v. Lieberman* (1982), 107 Ill. App. 3d 949, 438 N.E.2d 516; *People v. Weathers* (1974), 23 Ill. App. 3d 907, 320 N.E.2d 442, *rev'd on other grounds* (1975), 62 Ill. 2d 114, 338 N.E.2d 880.

■ In a related argument, defendant finds error in the trial court's refusal to instruct the jury with IPI Criminal No. 3.11, referring to "inconsistent testimony." Here, defendant questions R.A.S.'s testimony that she had not reported the earlier alleged rapes by defendant but did report the instant one. Defendant contends that this conduct was "inconsistent" and thus impeaching. We must reject defendant's contention and agree with the trial judge that testimony that she had not reported the previous rapes is not "inconsistent" with her trial testimony, nor did it "impeach" her. The instruction was correctly rejected.

Defendant next contends that a new sentencing hearing is required because the trial court erred when it allegedly punished defendant three times for a single act, increased his sentence on the

basis of "speculation" that complainant's sister was "traumatized" by having to testify against her father and in imposing the maximum term on defendant for the rape conviction.

In the course of the sentencing hearing the court stated its fear that the ordeal of the trial might have caused "permanent scars upon both [R.A.S. and S.S.] *** and I hope they will be able to overcome the harm" caused them. Defendant contends there was no basis in the record for the court's consideration of these alleged psychological scars as an aggravating factor.

In response, the State notes that a sentencing court has authority to consider a wide variety of factors in determining an appropriate sentence and that the court's statement here was a reasonable inference and not merely speculative.

■ In our opinion, this statement by the court does not require a new sentencing hearing. The remarks were neither uncalled for nor dwelled upon by the trial judge. No error occurred.

■ Defendant next contends that the court erred in first stating that "I can't think of anything worse" than an assault on a child, except for the taking of a life, and then in "refusing" to consider any sentence but the maximum for the rape charge. Our review of the record compels us to deny defendant's argument; the record does not demonstrate that the court "refused" to exercise its discretion but that, in its determination, it concluded the maximum sentence was here appropriate. The nature of this crime, and defendant's substantial prior record (including two convictions for theft, two convictions for robbery and convictions for burglary, possession of marijuana and aiding a prostitute) supports the court's decision. Sentencing is a function of the trial judge and, absent an abuse of that court's discretion, a reviewing court may not substitute its judgment for that of the sentencing judge. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) We find no abuse of discretion here.

Defendant next urges that his convictions for unlawful restraint and indecent liberties must be vacated because they are lesser included offenses of the greater rape conviction. We agree. *People v. Coleman* (1980), 83 Ill. App. 3d 429, 403 N.E.2d 1266; *People v. Ross* (1978), 60 Ill. App. 3d 857, 377 N.E.2d 230.

■ We do not, however, agree with defendant that the *vacatur* of those two convictions requires remandment for a new sentencing hearing. When, as here, "there is no indication from the record that a vacated conviction had any bearing on the sentence, it is not necessary to remand the cause for resentencing." *People v. Einstein* (1982), 106 Ill. App. 3d 526, 535.

In sum, we vacate defendant's conviction for unlawful restraint and indecent liberties with a child and the sentences imposed thereon. We affirm defendant's conviction for rape and the 30-year sentence imposed for that charge.

Affirmed in part; reversed in part.

STAMOS and DOWNING, JJ., concur.